## RELIEF FROM STAY WORKSHEET – REAL ESTATE

I, _Mary Gracia, Assistant Secretary_
(Name and Title)

of _Nationstar Mortgage LLC d/b/a Mr. Cooper_
(Name of Organization/Corporation/Moving Party)(hereinafter, "Movant")

hereby declare (or certify, verify, or state) as follows:

## BACKGROUND INFORMATION

1. Real property address which is the subject of this motion:  10 Reverend Taylor Drive, Ansonia, CT  06401
2. Lender Name:  Deutsche Bank National Trust Company, as Trustee for MORGAN STANLEY IXIS REAL ESTATE CAPITAL TRUST 2006-2 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-2
3. Date of Mortgage:  June 30, 2006
4. Post-Petition payment address:  P. O. Box 619094, Dallas, TX  75261-9741
5. The manner in which the movant perfected its interest in the property: recorded mortgage deed in volume 444 at Page 1055
6. All other material liens and encumbrances on the property:  See attached Exhibit A

## DEBT/VALUE REPRESENTATIONS

7. Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing the motion: $504,917.00
8. Movant's estimated market value of real property: $275,000.00
9. Source of estimated valuation: Schedule A/B of Bankruptcy Petition

## STATUS OF DEBT AS OF THE PETITION DATE

10. Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date:
    A.   Amount of principal:  $328,686.60
    B.   Amount of interest:  $17,685.74
    C.   Amount of escrow (taxes and insurance):  $9,953.53 advanced
    D.   Amount of forced placed insurance expended by Movant:  $
    E.   Amount of Attorney's fees billed to Debtor(s) pre-petition:  $
    F.   Amount of pre-petition late fees, if any, billed to Debtor(s):  $
11. Contractual interest rate as of the date of the petition:


    (if interest rate is (or was) adjustable, please list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:  _____)

12. Only with regard to a post-petition default, explain any additional pre-petition fees, charges or amounts charged to Debtor's/Debtors' account and not listed above: corporate advance $148,591.13

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:_____)

## AMOUNT OF ALLEGED POST-PETITION DEFAULT (N/A)

13. Date last payment was received: (mm/dd/yyyy) _____
14. Alleged total number of payments post-petition from filing of petition through payment due on (mm/dd/yyyy):_____
15. List all post-petition payments alleged to be in default:

### SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date Payment Due | Payment Amount Due Post-Petition |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

### SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date | Amount Received | Amount Applied to Principal and Interest | Amount Applied to Escrow | Late Fee Charges (if any) | Amount Applied to Legal Fees or Costs (specify) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

16. Amount of Movant's Attorney's fees billed to Debtor for the preparation, filing and prosecution of this motion: $750.00
17. Amount of Movant's filing fee for this motion $181.00

18. Only to the extent the movant is seeking payment in the motion, the amount of other Attorney's fees billed to Debtor post-petition: $_____

19. Only to the extent the movant is seeking payment in the motion, the amount of Movant's post-petition inspection fees: $_____

Only to the extent the movant is seeking payment in the motion, the amount of Movant's post-petition appraisal/broker's price opinion is: $_____

20. Only to the extent the movant is seeking payment in the motion, the amount of forced placed insurance or insurance provided by the Movant post-petition: $_____

21. Only to the extent the movant is seeking payment in the motion, the amount of the sum held in suspense by Movant in connection with this contract, if applicable: $_____

22. Only to the extent the movant is seeking payment in the motion, the amount of other post-petition advances or charges: i.e. taxes, insurance incurred by Debtor, etc.
$_____

23. Amount and date of post-petition payments offered by the Debtor and refused by the Movant:

| $ | Date: |
|---|---|

## REQUIRED ATTACHMENTS TO MOTION

The following exhibits are attached to the motion in support of the relief requested:

1. Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party.

2. Copies of documents establishing proof of standing to bring this Motion.

3. Copies of documents establishing that Movant's interest in the real property was perfected. For the purposes of example only, a complete and legible copy of mortgage containing the applicable recording information.

## CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

I certify that the information provided in this worksheet and/or exhibits attached to this worksheet is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

I further certify that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, and 3, immediately above, are true and accurate copies of the original documents, I further certify that the original documents are in movant's possession, except as follows:

I/we declare (or certify, swear, affirm, verify or state) that the foregoing is true and correct,

Executed on _____6/28/19_____ [date]

*Mary Gracia*

_____
[signature]

_____
Mary Gracia
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
[title]                     Affiant

_____

[lender]

Subscribed and sworn to before me this ___28 June 2019_____

*Chastity Wilson*

_____
Notary Public:  [name]

My Commission expires: [date]



CHASTITY WILSON
Notary Public, State of Texas
Comm. Expires 05-21-2023
Notary ID 130235636

JUDGMENTS AND LIENS

The following names have been searched for judgments and liens:  Manfred Vives ; Leticia Vives; James DeGennaro; Kimberly DeGennaro

Results:

| Document Type: | Judgment Lien Certificate | Execution Date: | 08/24/2010 |
|---|---|---|---|
| Book/Page and Instrument Number: | 492, 646 and 001341570001 | Filed/Recorded: | 08/31/2010 |
| Amount: | $2,865.28 + Costs + Interest | | |
| Plaintiff: | HSBC Bank Nevada, N.A. - Address Not Stated | | |
| Defendant: | Manfred Vives | | |
| Case Number: | SCC-327846 | | |

| Document Type: | Judgment Lien | Execution Date: | 12/27/2011 |
|---|---|---|---|
| Book/Page and Instrument Number: | 503, 356 and 00138770001 | Filed/Recorded: | 01/12/2012 |
| Amount: | $929.48 + Costs + Interest | | |
| Plaintiff: | Midland Funding, LLC - Address Not Stated | | |
| Defendant: | Manfred Vives | | |

| Document Type: | Special Sewer Use Lien | Execution Date: | 05/16/2014 |
|---|---|---|---|
| Volume/Page: | 525, 108 | Filed/Recorded: | 05/16/2014 |
| Amount: | $270.00 + Costs + Interest | | |
| Plaintiff: | City of Ansonia - Address Not Stated | | |
| Defendant: | Manfred Vives and Leticia Vives | | |

| Document Type: | Lien | Execution Date: | 08/15/2014 |
|---|---|---|---|
| Volume/Page: | 527, 89 | Filed/Recorded: | 08/15/2014 |
| Amount: | $477.00 + Costs + Interest | | |
| Plaintiff: | City of Ansonia - Address Not Stated | | |
| Defendant: | Manfred Vives and Leticia Vives | | |

| Document Type: | Lien City of Ansonia Certificate of Continuing Sewer for not More then Fifteen Years | Execution Date: | 07/29/2016 |
|---|---|---|---|
| Volume/Page: | 543, 993 | Filed/Recorded: | 07/29/2016 |
| Amount: | $5,478.12 + Costs + Interest | | |
| Plaintiff: | City of Ansonia - Address Not Stated | | |
| Defendant: | Manfred Vives and Leticia Vives | | |

| Document Type: | Special Sewer Use Lien City of Ansonia Certificate of Continuing Sewer for not More then Fifteen Years | Execution Date: | 05/14/2018 |
|---|---|---|---|
| Book/Page and Instrument Number: | 560, 426 and 001687850048 | Filed/Recorded: | 05/14/2018 |
| Amount: | $270.00 + Costs + Interest | | |
| Plaintiff: | City of Ansonia - Address Not Stated | | |
| Defendant: | Manfred Vives and Leticia Vives | | |

Exh. A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**AT NEW HAVEN**

In Re:  Manfred Vives a/k/a Manfred E. Vives a/k/a
Manfred Eduardo Vives, Debtor

| | |
|---|---|
| ) | Case No. 19-30893 |
| Deutsche Bank National Trust Company, ) | |
| as Trustee for MORGAN STANLEY IXIS ) | |
| REAL ESTATE CAPITAL TRUST 2006-2 ) | |
| MORTGAGE PASS THROUGH ) | |
| CERTIFICATES, SERIES 2006-2 ) | |
|   Movant ) | |
| ) | |
| VS. ) | |
| ) | Chapter 7 |
| Manfred Vives a/k/a ) | |
| Manfred E. Vives a/k/a ) | |
| Manfred Eduardo Vives ) | |
|   Respondent ) | |
| ) | |
| Barbara H. Katz, ) | |
|   Trustee ) | |
| ) | July 3, 2019 |
| OFFICE OF THE U.S. TRUSTEE ) | |

**NOTICE OF CONTESTED MATTER RESPONSE DATE**

Deutsche Bank National Trust Company, as Trustee for MORGAN STANLEY IXIS

REAL ESTATE CAPITAL TRUST 2006-2 MORTGAGE PASS THROUGH CERTIFICATES,

SERIES 2006-2 (the "Movant") has filed a Request for Relief (the "Contested Matter") with the

U. S. Bankruptcy Court.  Notice is hereby given that any Response to the Contested Matter must be filed with the Court no later than July 25, 2019*.  In the absence of a timely filed response, the proposed order in the Contested Matter **may** enter without further notice and hearing, see, 11 U.S.C. section 102(1).

Dated: July 3, 2019

                Movant,

                BY_____/s/ Paul Lewis Otzel_____
                PAUL LEWIS OTZEL, ESQ.
                KAPUSTA, OTZEL & AVERAIMO
                250 Broad Street
                Milford, CT  06460
                203-874-6773 (telephone)
                203-874-5765 (fax)
                staff@milfordlegal.com (e-mail)
                Fed Bar No. ct12009
                Its Attorney

*Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three days are added after the response date set in this notice.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## AT NEW HAVEN

In Re:  Manfred Vives a/k/a Manfred E. Vives a/k/a
Manfred Eduardo Vives, Debtor

| | |
|---|---|
| ) | Case No. 19-30893 |
| Deutsche Bank National Trust Company,    ) | |
| as Trustee for MORGAN STANLEY IXIS   ) | |
| REAL ESTATE CAPITAL TRUST 2006-2 ) | |
| MORTGAGE PASS THROUGH    ) | |
| CERTIFICATES, SERIES 2006-2    ) | |
|     Movant    ) | |
| ) | |
| VS.    ) | |
| ) | Chapter 7 |
| Manfred Vives a/k/a    ) | |
| Manfred E. Vives a/k/a    ) | |
| Manfred Eduardo Vives    ) | |
|     Respondent    ) | |
| ) | |
| Barbara H. Katz,    ) | |
|     Trustee    ) | |
| ) | July 3, 2019 |
| OFFICE OF THE U.S. TRUSTEE    ) | |

## REQUEST FOR RELIEF FROM
## SECTION 362 AUTOMATIC STAY OF PROCEEDINGS

Pursuant to 11 U.S.C. Sections 362(d)(1) and 362(d)(2), Movant, Deutsche Bank

National Trust Company, as Trustee for MORGAN STANLEY IXIS REAL ESTATE CAPITAL
TRUST 2006-2 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-2 requests
this Court for relief from the Section 362 automatic stay of proceedings, and hereby represents:

1. The debtor is the owner of the real property known as 10 Reverend Taylor Drive,
   Ansonia, CT  06401 (hereinafter referred to as "Subject Premises"). See conveyance deed
   dated June 29, 2006 and recorded July 5, 2006 in Volume 444 at Page 1053 of the
   Ansonia Land Records. Said conveyance deed is attached hereto as Exhibit A.

2. The subject premises is the personal residence of the Debtor. A copy of ECF #1, page 2
   evidencing same is attached as Exhibit B.

3. On June 30, 2006, The Debtor was originally indebted to Wilmington Finance, Inc. in the
   sum of THREE HUNDRED FIVE THOUSAND ONE HUNDRED FIFTY AND 00/100
   ($305,150.00) DOLLARS, as evidenced by a Note for said sum, dated on said date. A
   copy of said Note is annexed hereto and made a part hereof as Exhibit C.

4. On said date, by Mortgage Deed of that date, to secure said Note, Debtor mortgaged to
   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS, INC.) as
   Mortgagee for Wilmington Finance, Inc. a certain piece or parcel of land with buildings
   thereon, situated in the Town/City of Ansonia, County of New Haven, and State of
   Connecticut, known as 10 Reverend Taylor Drive, Ansonia, CT  06401, and being more

particularly bounded and described as set forth on Exhibit D attached hereto and made a part hereof.

Said Mortgage Deed is conditioned upon the payment of said Note according to its tenor and was recorded in the Land Records of such municipality on July 5, 2006 in Volume 444 at Page 1055. A copy of said Mortgage Deed is annexed hereto and made a part hereof as Exhibit E.

Said Mortgage Deed was assigned to Deutsche Bank National Trust Company as Trustee for Morgan Stanley IXIS Real Estate Capital Trust 2006-2 by virtue of an Assignment of Mortgage, recorded October 10, 2008 in Volume 477 at Page 1014 of the subject Land Records. A copy of said Assignment is annexed hereto and made a part hereof as Exhibit F.

Said Mortgage Deed was further assigned to Movant by virtue of an Assignment of Mortgage, recorded August 17, 2018 in Volume 562 at Page 866 of the subject Land Records. A copy of said Assignment is annexed hereto and made a part hereof as Exhibit G.

5. Debtor has failed to pay the Note according to its tenor, and said note is in default.

6. On August 28, 2018, Movant commenced a foreclosure action in the Connecticut Superior Court, Docket No. AAN-CV18-6029772-S. A copy of the Confirmation of e-Filing Transaction is attached as Exhibit H.

7. Judgment of foreclosure as not entered. A copy of the Confirmation of e-Filing Transaction evidencing same is attached as Exhibit H.

8. The effect of the subject bankruptcy petition stays all action on existing debt and foreclosure proceedings as provided for in U.S.C Section 362, unless otherwise ordered by this Court.

9. The value of the collateral/subject premises as set forth in Debtor's bankruptcy petition Schedule A/B: Real Property is $275,000.00. A copy of ECF #1, page 10 evidencing same is attached as Exhibit I.

10. The Creditor's total debt as of June 5, 2019 is $504,917.00, as set forth in the Affidavit of Debt annexed hereto and made a part hereof as Exhibit J.

11. The Movant's secured mortgage is subject to the following priority liens:

      (a)    Sewer Use charges as of record may appear;

      (b)    Water use charges as of record may appear;

      (c)    Real Estate Taxes to the City/Town of Ansonia.

12. The debtor is contractually past due on December 1, 2017.

12. Sufficient cause exists pursuant to 11 U.S.C. 362(d)(1) and 11 U.S.C. 362(d)(2) to grant Movant's relief from the automatic stay herein, which cause includes, but is not limited to:

a.  As of the date of this Request, debtor has failed to make post-petition periodic payments of interest and principal. See paragraph 6 of Movant's Affidavit of Debt at Exhibit J.

b.  The timing and facts surrounding in the Debtor's filing clearly evidences an intent to delay or frustrate the legitimate efforts of Movant to enforce its rights.

c.  The indebtedness to Movant exceeds the value of the secured property/collateral and therefore Movant is not adequately protected. See Exhibit I; See Exhibit J.

WHEREFORE, Movant, Deutsche Bank National Trust Company, as Trustee for

MORGAN STANLEY IXIS REAL ESTATE CAPITAL TRUST 2006-2 MORTGAGE PASS

THROUGH CERTIFICATES, SERIES 2006-2 requests an Order of this Court granting to

Movant and its successors and/or assigns relief from the automatic stay pursuant to 11 USC

Sections 362(d)(1) and 362(d)(2), so that it, and its successors and assigns, may proceed to

exercise its rights pursuant to the Note and Mortgage, and for leave to proceed with a State Court

foreclosure proceeding, short sale, or deed-in-lieu of foreclosure.

Dated:  July 3, 2019

<div style="margin-left: 40%;">

MOVANT

BY____/s/ Paul Lewis Otzel_____
     PAUL LEWIS OTZEL, ESQ.
     KAPUSTA, OTZEL & AVERAIMO
     250 Broad Street
     Milford, CT  06460
     203-874-6773 (telephone)
     staff@milfordlegal.com (e-mail)
     Fed Bar No. ct12009

</div>

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### AT NEW HAVEN

In Re:  Manfred Vives a/k/a Manfred E. Vives a/k/a
Manfred Eduardo Vives, Debtor

| | |
|---|---|
| Deutsche Bank National Trust Company, )<br>as Trustee for MORGAN STANLEY IXIS )<br>REAL ESTATE CAPITAL TRUST 2006-2 )<br>MORTGAGE PASS THROUGH )<br>CERTIFICATES, SERIES 2006-2 )<br>    Movant )<br>    )<br>VS. )<br>    )<br>Manfred Vives a/k/a )<br>Manfred E. Vives a/k/a )<br>Manfred Eduardo Vives )<br>    Respondent )<br>    )<br>Barbara H. Katz, )<br>    Trustee )<br>    )<br>OFFICE OF THE U.S. TRUSTEE )| Case No. 19-30893<br><br><br><br><br><br><br><br>Chapter 7 |

## PROPOSED ORDER

### ORDER GRANTING MOTION RELIEF FROM STAY

Deutsche Bank National Trust Company, as Trustee for MORGAN STANLEY IXIS REAL

ESTATE CAPITAL TRUST 2006-2 MORTGAGE PASS THROUGH CERTIFICATES, SERIES

2006-2 (the "Movant") filed a Motion for Relief from Stay (the "Motion"), *ECF No.*_____. After notice and a hearing, see 11 U.S.C. section 102(1), and in compliance with the Court's Bar Date Procedure, and it appearing that relief sought in the Motion should be granted, it is hereby ORDERED, that the automatic stay provided in 11 U.S.C. Section 362(a) is modified pursuant to 11 U.S.C. Sections 362(d)(1) and Section 362(d)(2) to permit the Movant and/or their successors and assignees, to exercise their rights, if any, with respect to real property known as 10 Reverend Taylor Drive, Ansonia, CT  06401, in accordance with applicable non-bankruptcy law.

No deficiency judgment shall be enforced without the further order of the Court, unless the case is dismissed.

The Movant is **NOT** requesting waiver of the fourteen (14) day period.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**AT NEW HAVEN**

In Re:  Manfred Vives a/k/a Manfred E. Vives a/k/a
Manfred Eduardo Vives, Debtor

| | |
|---|---|
| ) | Case No. 19-30893 |
| Deutsche Bank National Trust Company, ) | |
| as Trustee for MORGAN STANLEY IXIS ) | |
| REAL ESTATE CAPITAL TRUST 2006-2 ) | |
| MORTGAGE PASS THROUGH ) | |
| CERTIFICATES, SERIES 2006-2 ) | |
|     Movant ) | |
| ) | |
| VS. ) | |
| ) | Chapter 7 |
| Manfred Vives a/k/a ) | |
| Manfred E. Vives a/k/a ) | |
| Manfred Eduardo Vives ) | |
|     Respondent ) | |
| ) | |
| Barbara H. Katz, ) | |
|     Trustee ) | July 3, 2019 |
| ) | |
| OFFICE OF THE U.S. TRUSTEE ) | |

## CERTIFICATION

The undersigned Movant hereby certifies that on the 3rd day of July, 2019, I served the following upon all parties entitled to notice:

1. A copy of Request for Relief from Section 362 Automatic Stay of Proceedings;

2. A copy of the Proposed Order; and

3.  Notice of Contested Matter Response Date.

as follows:

via electronic notification:

Office of the U. S. Trustee:              USTPregion02.nh.ecf@usdoj.gov.

Barbara H. Katz, Bankruptcy Trustee:      barbarakatz@snet.net;
                                          BKatz@iq7technology.com

Neil Crane, Esq., Debtor's Counsel:       neilcranecourt@neilcranelaw.com

I further hereby certify that on July 3, 2019, I mailed via first class mail, postage prepaid, a copy of this foregoing document to the following:

Manfred Vives a/k/a
Manfred E. Vives a/k/a
Manfred Eduardo Vives
DEBTOR
10 Reverend Taylor Drive
Ansonia, CT  06401

                              BY____/s/ Paul Lewis Otzel_____
                                    PAUL LEWIS OTZEL, ESQ.
                                    KAPUSTA, OTZEL & AVERAIMO
                                    250 Broad Street
                                    Milford, CT  06460
                                    203-874-6773 (telephone)
                                    203-874-5765 (fax)
                                    staff@milfordlegal.com (e-mail)
                                    Fed Bar No. ct12009
                                    Its Attorney

Doc ID:   000051000003 Type: LAN
BK 444 PG 1052-1054

## WARRANTY DEED

**Know Ye, That WE, JAMES DeGENNARO JR.** and **KIMBERLY DeGENNARO**, both of the City of Ansonia, County of New Haven and State of Connecticut for the consideration of THREE HUNDRED FIFTY NINE THOUSAND AND NO/100 ($359,000.00) DOLLARS received to our full satisfaction of **MANFRED VIVES** and **LETICIA VIVES**, both of the Town of Stratford, County of Fairfield and State of Connecticut do give, grant, bargain, sell and confirm unto the said **MANFRED VIVES** and **LETICIA VIVES** and unto the survivor of them, and unto such survivor's heirs and assigns forever all that certain piece of property together with the buildings and improvements thereon, known as 10 Rev. Taylor Drive located in the City of Ansonia, County of New Haven and State of Connecticut and more particularly bounded and described as follows:

All that certain piece or parcel of land, with the buildings and improvements thereon, situated in the Town of Ansonia, County of New Haven and State of Connecticut, designated as Lot No. 9 as shown on certain maps entitled "Record Subdivision Map, Northfield Farms, Ansonia, Connecticut, dated October 1, 1991, Last revised 5/20/92, recorded in Ansonia Map Volume 13, Pages 7, 8, 9 & 10.

The premises are hereby conveyed together with and subject to the terms, conditions, agreements, obligations and easements contained in the Restated Declaration of Northfield Farms dated February 3, 1993 and recorded February 3, 1993 in the Ansonia Land Records in Volume 264 Page 127 and in the Woodbridge Land Records in Volume 185 at Page 300 as it may be amended or supplemented. The Grantees, by acceptance of this deed, hereby expressly assume and agree to be bound by and to comply with all of the terms, conditions, agreements, obligations and easements as set forth in Declaration, the Bylaws of the Association and Exhibits as they may be amended or supplemented.

SUBJECT TO:

1. Real Estates Taxes on the Grand List of October 1, 2005, and thereafter, which the Grantees herein agree and assume to pay.
2. Terms, conditions, easements, reservations as set forth in a Restatement and Declaration of Northfield Farms dated February 3, 1993 and recorded in Volume 264 at Page 127 and Warranty Deed dated April 15, 1993 and recorded in Volume 266 at Page 69.
3. Notes and conditions as shown on filed Map Volume 13 at Pages 7, 8, 9 & 10.
4. Terms and conditions of a certain Agreement entitled "City of Ansonia-Town of Woodbridge Northfield Farms Homeowners Association Detention Basin Maintenance Agreement", dated August 5, 1992 and recorded in Volume 259 at Page 835 of the Ansonia Land Records.
5. Agreement in favor of the Ansonia-Derby Water Company, recorded in Volume 260 at Page 583 of the Ansonia Land Records.
6. Easement in favor of the United Illuminating Company, dated August 14, 1992 and recorded in Volume 260 at Page 790 of the Ansonia Land Records.

$897.50 CITY CONVEYANCE TAX
Madelina H. Bettone
Town Clerk of Ansonia

$1,795.00 STATE CONVEYANCE TAX
Madelina H. Bettone
Town Clerk of Ansonia

Exh. A

To Have and to Hold the above granted and bargained premises, with the appurtenances thereof, unto them the said grantees, and unto the survivor of them, and unto such survivor's heirs and assigns forever, to them and their own proper use and behoof.

And also, we the said grantors do for ourselves and our heirs, executors, administrators, and assigns, covenant with the said grantees and with the survivor of them, and with such survivor's heirs and assigns, that at and until the ensealing of these presents we are well seized of the premises, as a good indefeasible estate in FEE SIMPLE; and we have good right to bargain and sell the same in manner and form as is above written; and that the same is free from all encumbrances whatsoever, except as hereinbefore mentioned.

And Furthermore, we the said grantors do by these presents bind ourselves and our heirs, and assigns forever to WARRANT AND DEFEND the above granted and bargained premises to them the said grantees, and to the survivor of them and to such survivor's heirs and assigns, against all claims and demands whatsoever, except as hereinbefore mentioned.

**In witness whereof,** we have hereunto set our hands and seals this 29th day of June in the year of our Lord Two Thousand and Six.

Signed, Sealed and Delivered in the presence of

_____           _____ L.S.
Barbara L. DeGennaro                 JAMES DeGENNARO, JR

_____           _____ L.S.
William J. Neary                     KIMBERLY DeGENNARO

State of Connecticut          )
                              )          ss. Milford          June 29,  A.D. 2006
County of New Haven           )

    Personally Appeared James DeGennaro, Jr., Signer and Sealer of the foregoing Instrument, and acknowledged the same to be his free act and deed before me.

                                   Barbara L. DeGennaro
                                   Commissioner of the Superior Court


State of Connecticut          )
                              )          ss. Milford          June 29,  A.D. 2006
County of New Haven           )

    Personally Appeared Kimberly DeGennaro, Signer and Sealer of the foregoing Instrument, and acknowledged the same to be her free act and deed before me.

                                   William J. Neary
                                   Commissioner of the Superior Court


Latest address of Grantee:

Street:10 Rev. Taylor Drive
City: Ansonia
State: CT
Zip Code: 06401

Received for Record at Ansonia, CT
On 07/05/2006 At  2:01:33 pm

Debtor 1    **Manfred Vives**
Debtor 2    **Leticia Vives**

Case number *(if known)* _____

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**<br><br>Include trade names and *doing business as* names | ■ I have not used any business name or EINs.<br><br>Business name(s)<br><br>EINs | ■ I have not used any business name or EINs.<br><br>Business name(s)<br><br>EINs |
| **5. Where you live** | **10 Reverend Taylor Drive**<br>**Ansonia, CT 06401**<br>Number, Street, City, State & ZIP Code<br><br>**New Haven**<br>County<br><br>**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.<br><br>Number, P.O. Box, Street, City, State & ZIP Code | **If Debtor 2 lives at a different address:**<br><br>Number, Street, City, State & ZIP Code<br><br>County<br><br>**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.<br><br>Number, P.O. Box, Street, City, State & ZIP Code |
| **6. Why you are choosing *this district* to file for bankruptcy** | *Check one:*<br><br>■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.) | *Check one:*<br><br>■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.) |

Exh. B.

SEE 'INTEREST-ONLY ADDENDUM' ATTACHED HERETO AND MADE A PART HEREOF.
SEE 'PREPAYMENT RIDER TO NOTE' ATTACHED HERETO AND MADE A PART HEREOF.
Loan Numbe                                                          t

# ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| June 30, 2006 | MILFORD | Connecticut |
|---|---|---|
| [Date] | [City] | [State] |

10 REV TAYLOR DRIVE
ANSONIA, CT  06401

[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $   305,150.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Wilmington Finance, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of                 7.990         %. The interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on        August 1, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on        July 1, 2036        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    PO Box 209
Plymouth Meeting, PA  19462                              or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $  2,031.79                  . This amount may change.

**WILMINGTON FINANCE, INC. - MODIFIED**
**MULTISTATE ADJUSTABLE RATE NOTE** - LIBOR INDEX - Single Family - Freddie Mac **UNIFORM INSTRUMENT**                    Form 3590 1/01

VMP® -815N (0210)
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4                            Initials: _RV/MV_
DDS-FAB



Exhibit C

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of                July, 2009                , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding                Five and 990/1000 percentage points (          5.990     %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than                9.990   % or less than          7.990    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than          13.990 %, or less than          7.990 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.



## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be            5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower** . If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
LETICIA VIVES               -Borrower

_____ (Seal)
MANFRED VIVES          -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                           - Borrower

_____ (Seal)
                            -Borrower

*[Sign Original Only]*



# INTEREST-ONLY ADDENDUM
## ADJUSTABLE RATE NOTE

LOAN NO.:

THIS INTEREST-ONLY ADDENDUM is made this  30th  day of  June, 2006  , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") and the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Note to

Wilmington Finance, Inc.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

10 REV TAYLOR DRIVE
ANSONIA, CT  06401

**THIS ADDENDUM SUPERSEDES Section 3(A) and (B) of the Note. None of the other provisions of the note are changed by this addendum.**

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will pay interest by making payments every month for the first  60  payments (the "Interest-Only Period") in amount sufficient to pay interest as it accrues.  I will pay principal and interest by making payments every month thereafter for the next  300  payments in an amount sufficient to fully amortize the outstanding principle balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payment on the 1st day of each month beginning  August 1, 2006  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on  July 1, 2036  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my payments at  Wilmington Finance, Inc.
PO Box 209
Plymouth Meeting, PA  19462

or at a different place if required by the Note Holder.

### (B)  Amount of My Initial Monthly Payments

Each of my initial interest-only monthly payments will be in the amount of US $  2,031.79  . This amount may change.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest-Only Addendum.

_____ (Seal)       _____ (Seal)
LETICIA VIVES                -Borrower    MANFRED VIVES              -Borrower

_____ (Seal)       _____ (Seal)
                             -Borrower                               -Borrower

_____ (Seal)       _____ (Seal)
                             -Borrower                               -Borrower

_____ (Seal)       _____ (Seal)
                             -Borrower                               -Borrower

DDS-HAJ                                                              (08/02)

# PREPAYMENT RIDER TO NOTE

Loan No.:

The Note dated                       June 30, 2006                    between
Wilmington Finance, Inc.

(Lender) and

LETICIA VIVES, MANFRED VIVES

(Borrower or I)

is hereby amended as follows:

I.        Additional Covenants.  Notwithstanding anything to the contrary set forth in the Note or Security Instrument,
Borrower and Lender covenant, and agree, that the provisions of the section of the Note entitled "BORROWER'S RIGHT TO
PREPAY" or "BORROWER'S PAYMENTS BEFORE THEY ARE DUE" are amended to read as follows:

Subject to the Prepayment Penalty provided below, I have the right to make payments of Principal at any time before
they are due.  A payment of Principal only is known as a "Prepayment."  A "Full Prepayment" is the prepayment of the entire
unpaid Principal due under the Note.  A payment of only part of the unpaid Principal is known as a "Partial Prepayment."  When I
make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I
have not made all the monthly payments due under the Note.

**If, within the        36        month period beginning with the date I execute the Note (the "Penalty Period"), I
make a Full Prepayment, or Partial Prepayment in any twelve (12)-month period that exceeds 10% of the original
Principal loan amount, I will pay a Prepayment charge as consideration of the Note Holder's acceptance of such
Prepayment. The Prepayment charge will equal                       5.000% of the then Principal balance of the Note.  No
Prepayment charge will be assessed for any Prepayment occurring after the Penalty Period.**

The Rider will remain in full force and effect unless the Note is transferred by Lender and the Borrower is notified in
writing by the new Note Holder that such Note Holder, at its sole option, has declared the Rider null and void.  If the Rider is
declared null and void, the original Note terms shall remain in full force and effect.

_____ (Seal)          _____ (Seal)
                                   -Borrower                                            -Borrower
LETICIA VIVES                                      MANFRED VIVES

_____ (Seal)          _____ (Seal)
                                   -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                            -Borrower

DDS-BAF

(03/03)

## ALLONGE TO NOTE

Allonge to note dated:        6/30/2006

In Favor of :                     Wilmington Finance, Inc.

And executed by:              **LETICIA  VIVES and  MANFRED   VIVES**

Property  Address:            10 REV TAYLOR DRIVE
                              ANSONIA, CT  06401,

Loan Amount:                  $ 305,150.00

Pay to the order of :

without recourse:             Wilmington Finance, Inc.



By:                           _____
                              Don Malabuyo
Title:                        Designated Signer

# SCHEDULE A

ALL THAT certain piece or parcel of land, with the buildings and improvements thereon, situated in the Town of Ansonia, County of New Haven and State of Connecticut, designated as Lot No. 9 as shown on certain maps entitled "Records Subdivision Map, Northfield Farms, Ansonia, Connecticut, dated October 1, 1991, Last revised 5/20/92, recorded in Ansonia Map Volume 13, Pages 7, 8, 9 & 10.

The premises are hereby conveyed together with and subject to the terms, conditions, agreements, obligations and easements contained in the Restated Declaration of Northfield Farms dated February 3, 1993 and recorded February 3, 1993 in the Ansonia Land Records in Volume 264 at Page 127 and in the Woodbridge Land Records in Volume 185 at Page 300 as it may be amended or supplemented.

Exh. D.

Doc ID:   000051010019 Type: LAN
BK **444** PG **1055-1073**

Return To:
Wilmington Finance, Inc.
401 Plymouth Road, Suite 400
Plymouth Meeting, PA  19462
Prepared By:
Wilmington Finance, Inc.
650 Ten Rod Road
North Kingstown, RI  02852

_____ [Space Above This Line For Recording Data] _____

# OPEN-END MORTGAGE DEED

Loan Number

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated     June 30, 2006
together with all Riders to this document.
**(B) "Borrower"** is

Manfred Vives And Leticia Vives



Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**CONNECTICUT** - Single Family- Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**     Form 3007 1/01

VMP®-6A(CT) (0005).01
Page 1 of 14          Initials:
          VMP Mortgage Forms, Inc.

DDS-6CT

Exh. E

**(D) "Lender"** is

Wilmington Finance, Inc.

Lender is a   Corporation

organized and existing under the laws of                                    Delaware
Lender's address is   401 Plymouth Road, Suite 400
Plymouth Meeting, PA  19462
**(E) "Note"** means the promissory note signed by Borrower and dated                June 30, 2006
The Note states that Borrower owes Lender

Three Hundred Five Thousand One Hundred Fifty and 00/100                                    Dollars
(U.S. $305,150.00                          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than                                 July 1, 2036
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to
be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development | [ ] Rider 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

Schedule A - Legal Description

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.



Initials: _____

VMP®-6A(CT) (0005).01
DDS-6CT

Form 3007  1/01

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

| County | of | NEW HAVEN | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART OF HEREOF.

Parcel ID Number: 111/0003/0009                                which currently has the address of

10 REV TAYLOR DRIVE                                                                          [Street]

ANSONIA                    [City]    , Connecticut          06401          [Zip Code]

("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

SCHEDULE A

ALL THAT certain piece or parcel of land, with the buildings and improvements thereon, situated in the Town of Ansonia, County of New Haven and State of Connecticut, designated as Lot No. 9 as shown on certain maps entitled "Records Subdivision Map, Northfield Farms, Ansonia, Connecticut, dated October 1, 1991, Last revised 5/20/92, recorded in Ansonia Map Volume 13, Pages 7, 8, 9 & 10.

The premises are hereby conveyed together with and subject to the terms, conditions, agreements, obligations and easements contained in the Restated Declaration of Northfield Farms dated February 3, 1993 and recorded February 3, 1993 in the Ansonia Land Records in Volume 264 at Page 127 and in the Woodbridge Land Records in Volume 185 at Page 300 as it may be amended or supplemented.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.



Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.



If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.



Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.



Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

**25. Future Advances.** Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ 
Joseph J. Mager Jr.

_____ 
Geraldine A. Grucce

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
Leticia Vives                    -Borrower

_____ (Seal)
Manfred Vives                    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

**STATE OF CONNECTICUT,**          NEW HAVEN          County ss:  Milford

The foregoing instrument was acknowledged before me this   June 30, 2006
by     MAnfred Vives and Leticia Vives

My Commission Expires:

_____
XXXXXXXXXX Joseph J. Mager Jr.
Commissioner of the Superior Court

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

Loan Number

    THIS ADJUSTABLE RATE RIDER is made this    30th    day of                June, 2006                , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

Wilmington Finance, Inc.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

<div align="center">

10 REV TAYLOR DRIVE
ANSONIA, CT  06401

[Property Address]

</div>

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

    **ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
    The Note provides for an initial interest rate of                7.990   %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
    **(A) Change Dates**
    The interest rate I will pay may change on the first day of                July, 2009                , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**WILMINGTON FINANCE, INC. - MODIFIED**
**MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)** - Single Family - **Freddie Mac UNIFORM INSTRUMENT**

-815R (0008)              **Form 3192 1/01**
Page 1 of 4              Initials:
VMP MORTGAGE FORMS - (800)521-7291
DDS-GAO

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Five and 990/1000                        percentage points (          5.990 %) to the Current Index.
The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than          9.990 % or less than          7.990    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than          13.990%, or less than          7.990 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

VMP-815R (0008)                     Page 2 of 4                     Form 3192 1/01
DDS-GAO

Initials: _____

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _____

VMP®-815R (0008)

DDS-GAO

Page 3 of 4

Form 3192 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
                                -Borrower
Leticia Vives

_____ (Seal)
                                -Borrower
Manfred Vives

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

VMP®-815R (0008)
DDS-GAO

Page 4 of 4

Form 3192 1/01

Received for Record at Ansonia, CT
On 07/05/2006 At 2:02:30 pm

Doc ID:   001274180001 Type: LAN
BK 477   PG 1014

## ASSIGNMENT OF MORTGAGE

Know all men by these presents, that Mortgage Electronic Registration Systems, Inc., with a mailing address of 1818 Library Street, Suite 300, Reston, VA 20190 does hereby grant, bargain, sell, assign, transfer, and set over to Deutsche Bank National Trust Company as Trustee for Morgan Stanley IXIS Real Estate Capital Trust 2006-2 with a mailing address of c/o Countrywide Home Loans, Inc, 7105 Corporate Drive, Plano, TX 75024 and its successors and assigns, all interest under that certain mortgage to Mortgage Electronic Registration Systems, Inc. from Leticia Vives and Manfred Vives, dated June 30, 2006 and recorded July 5, 2006 in Volume 444 at Page 1055 of the Ansonia Land Records, together with the mortgage note secured thereby.

**In Witness Whereof**, the Assignor has duly executed this instrument this October 6, 2008.

Signed, Sealed and Delivered
in the Presence of:

Witness Laura J. Monti

Witness F. Erik Kaneko

Mortgage Electronic Registration Systems, Inc.

By_____
    Adam L. Bendett
    Its Vice President

STATE OF CONNECTICUT   :
                                    Farmington
COUNTY OF HARTFORD    :

On this October 6, 2008, personally appeared Adam L. Bendett, who is known to me to be the person who executed the foregoing instrument as the Vice President, of the Corporation that executed the foregoing instrument, and acknowledged the same to be the free act and deed of said Corporation, before me.

F. Erik Kaneko
Notary Public
My Commission Expires:

Received for Record at Ansonia, CT
On 10/10/2008 At 11:03:21 am

Exh. F

Doc ID: 001698310001 Type: LAN
BK **562** PG**866**

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

Please forward to:
Milford Law, LLC
250 Broad Street
Milford, CT 06460
File No.: CHEC-01811                    ER

## CORPORATE ASSIGNMENT OF MORTGAGE

Ansonia City, Connecticut
SELLER'S SERVICING

Date of Assignment: August 13th, 2018
Assignor: DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR MORGAN STANLEY IXIS REAL
ESTATE CAPITAL TRUST 2006-2, BY NATIONSTAR MORTGAGE LLC AS IT'S ATTORNEY-IN-FACT at 8950
CYPRESS WATERS BLVD, COPPELL, TX. 75019
Assignee: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY IXIS REAL
ESTATE CAPITAL TRUST 2006-2 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-2 at 1761 E. ST.
ANDREW PLACE, SANTA ANA, CA  92705-4934

Executed By: MANFRED VIVES AMD LETICIA VIVES  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR WILMINGTON FINANCE, INC.
Date of Mortgage: 06/30/2006 Recorded: 07/05/2006 in Book/Reel/Liber: 444 Page/Folio: 1055 In Ansonia City,
State of Connecticut.

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $305,150.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

   DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR MORGAN STANLEY IXIS REAL ESTATE
CAPITAL TRUST 2006-2, BY NATIONSTAR MORTGAGE LLC AS IT'S ATTORNEY-IN-FACT
On August 13th, 2018

By:_____
MOHAMED HAMEED, Vice-President

WITNESS                                    WITNESS

                                           Daniela Horvath

STATE OF Texas
COUNTY OF Dallas

On August 13th, 2018, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas,
personally appeared MOHAMED HAMEED, Vice-President, personally known to me to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
COLLEEN BARNETT
Notary Expires: 11/30/2019 #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)

Received for Record at Ansonia, CT
on 08/17/2018 At 10:09:29 am

Exh.  G

Case Detail - AAN-CV18-6029772-S

**State of Connecticut Judicial Branch**
# Superior Court E-Filing



| E-Services Home | Attorney/Firm: MILFORD LAW LLC D/B/A KAPUSTA OTZEL & AV (003287) | | E-Mail: staff@milfordlegal.com    Logout |
|---|---|---|---|

✎ AAN-CV18-6029772-S    DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FO v. VIVES, MANFRED Et Al
Prefix/Suffix: [none]    Case Type: P00    File Date: 08/28/2018    Return Date: 09/04/2018

| Case Detail | Notices | History | Scheduled Court Dates | Help Manual |
|---|---|---|---|---|

Pending Foreclosure Sales 🗗       To receive an email when there is activity on this case, click here. 🗗

Select Case Activity: E-File a Pleading or Motion ▾   Go

Information updated as of: 06/26/2019

| Case Information |
|---|

Case Type: P00 - Property - Foreclosure
Court Location: Milford JD
Property Address: 10 REV TAYLOR DRIVE, ANSONIA, CT 06401
List Type: No List Type
Trial List Claim:
Last Action Date: 06/04/2019   (The "last action date" is the date the information was entered in the system)

| Disposition Information |
|---|

Disposition Date:
Disposition:
Judge or Magistrate:

| Party & Appearance Information |
|---|

| Party | | No Fee Party | Party Category | Party Type |
|---|---|---|---|---|
| P-01 | **DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR MORGAN STANLEY AS TRUSTEE FOR MORGAN STANLEY IXIS REAL ESTATE CAPITAL TRUST 2006-2** | | Plaintiff | Firm or Corporation |
| | Attorney: ✎ MILFORD LAW LLC D/B/A KAPUSTA OTZEL & AV (003287) File Date: 08/28/2018 250 BROAD STREET MILFORD, CT 06460 | | | |
| D-01 | **MANFRED VIVES** | | Defendant | Person |
| | Self-Rep: 10 REV RAYLOR DRIVE ANSONA, CT 06401 | File Date: 08/31/2018 | | |
| D-02 | **LETICIA VIVES** | | Defendant | Person |
| | Self-Rep: 10 REV TAYLOR DRIVE ANSONIA, CT 06401 | File Date: 08/31/2018 | | |
| D-03 | **HSBC BANK NEVADA, NATIONAL ASSOCIATION** Non-Appearing | | Defendant | Firm or Corporation |
| D-04 | **MIDLAND FUNDING, LLC** Non-Appearing | | Defendant | Firm or Corporation |

**Viewing Documents on Civil, Housing and Small Claims Cases:**

If there is an ✎ in front of the docket number at the top of this page, then the file is electronic (paperless).

- Documents, court orders and judicial notices in electronic (paperless) civil, housing and small claims cases with a return date on or after January 1, 2014 are available publicly over the internet.* For more information on what you can view in all cases, view the Electronic Access to Court Documents Quick Card.

- For civil cases filed prior to 2014, court orders and judicial notices that are electronic are available publicly over the internet. Orders can be viewed by selecting the link to the order from the list below. Notices can be viewed by clicking the **Notices** tab above and selecting the link.*

- Documents, court orders and judicial notices in an electronic (paperless) file can be viewed at any judicial district courthouse during normal business hours.*

- Pleadings or other documents that are not electronic (paperless) can be viewed only during normal business hours at the Clerk's Office in the Judicial District where the case is located.*

- An Affidavit of Debt is not available publicly over the internet on small claims cases filed before October 16, 2017.*

*Any documents protected by law Or by court order that are Not open to the public cannot be viewed by the public online And can only be viewed in person at the clerk's office where the file is located by those authorized by law or court order to see them.

| Motions / Pleadings / Documents / Case Status | | | | |
|---|---|---|---|---|
| **Entry No** | **File Date** | **Filed By** | **Description** | **Arguable** |

*Exhibit H* (handwritten)

Left sidebar navigation:
E-Services Home
E-Services Inbox
Superior Court E-Filing
   Civil/Family
   Housing
   Small Claims
E-File a New Case
E-File on an Existing Case
   By Docket Number
   By Party Name
   List My Cases
Court Events
   By Date
   By Juris Number
   By Docket Number
Short Calendars
   Markings Entry
   Markings History
   My Short Calendars
   By Court Location 🗗
   Calendar Notices 🗗
My Shopping Cart (0)
My E-Filed Items
Pending Foreclosure Sales 🗗
Search By Property Address

Case Detail - AAN-CV18-6029772-S

| | 08/28/2018 | P | SUMMONS 🗐 | |
|---|---|---|---|---|
| | 08/28/2018 | P | COMPLAINT 🗐 | |
| | 08/31/2018 | | APPEARANCE 🗐<br>*Watermark* | |
| | 08/31/2018 | | APPEARANCE 🗐 | |
| | 08/31/2018 | | APPEARANCE 🗐 | |
| 100.30 | 08/28/2018 | P | RETURN OF SERVICE 🗐 | No |
| 101.00 | 08/28/2018 | P | LIS PENDENS 🗐 | No |
| 102.00 | 08/28/2018 | P | SUPPLEMENTAL RETURN 🗐<br>HSBC BANK NEVADA, N.A. | No |
| 103.00 | 08/31/2018 | D | FORECLOSURE MEDIATION REQUEST/CERTIFICATE JD-CV-108 🗐<br>*RESULT:* Order 9/12/2018 BY THE CLERK | No |
| 103.10 | 09/12/2018 | C | ORDER 🗐<br>Case assigned to FMP<br>*RESULT:* Order 9/12/2018 BY THE CLERK | No |
| 104.00 | 08/31/2018 | D | FORECLOSURE MEDIATION REQUEST/CERTIFICATE JD-CV-108 🗐<br>*RESULT:* Order 9/12/2018 BY THE CLERK | No |
| 104.10 | 09/12/2018 | C | ORDER 🗐<br>*RESULT:* Order 9/12/2018 BY THE CLERK | No |
| 105.00 | 09/13/2018 | P | FORECLOSURE MEDIATION PLAINTIFF'S COMPLIANCE WITH SERVICE (NO DOCUMENT) | No |
| 106.00 | 09/13/2018 | C | FORECLOSURE MEDIATION – ELIGIBLE CASE (NO DOCUMENT) | No |
| 107.00 | 09/13/2018 | C | FORECLOSURE MEDIATION-COMPLIANCE WITH P.A.09-209 (NO DOCUMENT) SEE FORM# JD-CV-109 | No |
| 108.00 | 10/30/2018 | C | FORECLOSURE MEDIATOR'S PREMEDIATION REPORT 🗐 | No |
| 109.00 | 12/07/2018 | D | MOTION FOR CONTINUANCE 🗐<br>*RESULT:* Granted 12/13/2018 HON JOHN MORAN | No |
| 109.01 | 12/13/2018 | C | ORDER 🗐<br>*RESULT:* Granted 12/13/2018 HON JOHN MORAN | No |
| 110.00 | 01/22/2019 | D | MOTION FOR CONTINUANCE 🗐<br>*RESULT:* Granted 1/23/2019 HON JOHN MORAN | No |
| 110.01 | 01/23/2019 | C | ORDER 🗐<br>*RESULT:* Granted 1/23/2019 HON JOHN MORAN | No |
| 111.00 | 02/19/2019 | D | MOTION FOR CONTINUANCE 🗐<br>*RESULT:* Granted 2/21/2019 HON JOHN MORAN | No |
| 111.01 | 02/21/2019 | C | ORDER 🗐<br>*RESULT:* Granted 2/21/2019 HON JOHN MORAN | No |
| 112.00 | 04/02/2019 | C | FORECLOSURE MEDIATION - MOTION FOR MODIFICATION OF MEDIATION PERIODJD-CV-96<br>*RESULT:* Granted 4/2/2019 HON JOHN MORAN | No |
| 112.01 | 04/02/2019 | C | ORDER 🗐<br>*RESULT:* Granted 4/2/2019 HON JOHN MORAN | No |
| 113.00 | 04/02/2019 | P | MOTION FOR CONTINUANCE 🗐<br>*RESULT:* Granted 4/2/2019 HON JOHN MORAN | No |
| 113.01 | 04/02/2019 | C | ORDER 🗐<br>*RESULT:* Granted 4/2/2019 HON JOHN MORAN | No |
| 114.00 | 05/29/2019 | C | FORECLOSURE MEDIATION TIME PERIOD EXPIRED | No |
| 115.00 | 06/04/2019 | | NOTICE OF BANKRUPTCY 🗐 | No |

| Scheduled Court Dates as of 06/25/2019 | | | | |
|---|---|---|---|---|
| AAN-CV18-6029772-S - DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FO v. VIVES, MANFRED Et Al | | | | |
| **#** | **Date** | **Time** | **Event Description** | **Status** |
| | | | No Events Scheduled | |

Judicial ADR events may be heard in a court that is different from the court where the case is filed. To check location information about an ADR event, select the **Notices** tab on the top of the case detail page.

Matters that appear on the Short Calendar and Family Support Magistrate Calendar are shown as scheduled court events on this page. The date displayed on this page is the date of the calendar.

All matters on a family support magistrate calendar are presumed ready to go forward.

The status of a Short Calendar matter is not displayed because it is determined by markings made by the parties as required by the calendar notices and the civil🗐 or family🗐 standing orders. Markings made electronically can be viewed by those who have

electronic access through the Markings History link on the Civil/Family Menu in E-Services. Markings made by telephone can only be obtained through the clerk's office. If more than one motion is on a single short calendar, the calendar will be listed once on this page. You can see more information on matters appearing on Short Calendars and Family Support Magistrate Calendars by going to the Civil/Family Case Look-Up page and Short Calendars By Juris Number or By Court Location.

Periodic changes to terminology that do not affect the status of the case may be made.
This list does not constitute or replace official notice of scheduled court events.

**Disclaimer:** For civil and family cases statewide, case information can be seen on this website for a period of time, from one year to a maximum period of ten years, after the disposition date. If the Connecticut Practice Book Sections 7-10 and 7-11 give a shorter period of time, the case information will be displayed for the shorter period. Under the Federal Violence Against Women Act of 2005, cases for relief from physical abuse, foreign protective orders, and motions that would be likely to publicly reveal the identity or location of a protected party may not be displayed and may be available only at the courts.

Copyright © 2019, State of Connecticut Judicial Branch

**Fill in this information to identify your case and this filing:**

| | | |
|---|---|---|
| Debtor 1 | **Manfred Vives** | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Leticia Vives** | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: DISTRICT OF CONNECTICUT

Case number

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property

**12/15**

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
■ Yes. Where is the property?

1.1

**10 Reverend Taylor Drive**
Street address, if available, or other description

**Ansonia          CT      06401-0000**
City                State        ZIP Code

**New Haven**
County

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $275,000.00 | $275,000.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**100% owners**

☐ Check if this is community property (see instructions)

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.........................................=>

$275,000.00

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Exhibit I

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**AT NEW HAVEN**

In Re:  Manfred Vives a/k/a Manfred E. Vives a/k/a
Manfred Eduardo Vives, Debtor

| | |
|---|---|
| ) | Case No. 19-30893 |
| Deutsche Bank National Trust Company, ) | |
| as Trustee for MORGAN STANLEY IXIS ) | |
| REAL ESTATE CAPITAL TRUST 2006-2 ) | |
| MORTGAGE PASS THROUGH ) | |
| CERTIFICATES, SERIES 2006-2 ) | |
|     Movant ) | |
| ) | |
| VS. ) | Chapter 7 |
| ) | |
| Manfred Vives a/k/a ) | |
| Manfred E. Vives a/k/a ) | |
| Manfred Eduardo Vives ) | |
|     Respondent ) | |
| ) | |
| Barbara H. Katz, ) | |
|     Trustee ) | |
| ) | |
| OFFICE OF THE U.S. TRUSTEE ) | |

<u>**AFFIDAVIT OF DEBT**</u>

STATE OF TEXAS

COUNTY OF DENTON

I, _Mary Gracia_, being duly sworn according to law, depose and say:

PURSUANT TO FEDERAL LAW, THIS LAW FIRM IS A DEBT COLLECTOR. PLEASE BE ADVISED THAT THIS IS AN
ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE, THIS
COMMUNICATION IS NOT AN ATTEMPT TO COLLECT THE DEBT AGAINST YOU PERSONALLY, BUT IS NOTICE
OF A POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY.

1.      I am authorized to sign this affidavit as a(n) _Assistant Secretary_ of Nationstar

Mortgage LLC d/b/a Mr. Cooper (**Nationstar**), servicer for Movant, Deutsche Bank National

Trust Company, as Trustee for MORGAN STANLEY IXIS REAL ESTATE CAPITAL TRUST

2006-2 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-2.

2.      Nationstar maintains records for the loan that is secured by the mortgage being

foreclosed in this action.  As part of my job responsibilities for Nationstar, I am familiar with the

type of records maintained by Nationstar in connection with the loan.

3.      I have personal knowledge of the facts in this affidavit based upon a review of

Nationstar's business records, and the information in this affidavit is taken from Nationstar's

business records.  I have personal knowledge of Nationstar's procedures for creating the records

maintained by Nationstar in connection with the loan.  They are: (a) made at or near the time of

the occurrence of the matters recorded by persons with personal knowledge of the information in

the business record, or from information transmitted by persons with personal knowledge; (b)

made and kept in the usual and ordinary course of Nationstar's regularly conducted business

activities; and (c) created by Nationstar as regular practice.

4.      Movant has possession of the promissory note and held the note at the time of

filing the Voluntary Petition for Bankruptcy.  The promissory note is endorsed in blank by

Wilmington Finance, Inc.

5.      I have reviewed the portion of Nationstar's business records that reflect the

amounts due on the loan.  They show Manfred Vives defaulted, and the

business records show amounts due on the loan through June 5, 2019 are due and unpaid. The

amounts total $504,917.00 and consist of the following:

PURSUANT TO FEDERAL LAW, THIS LAW FIRM IS A DEBT COLLECTOR. PLEASE BE ADVISED THAT THIS IS AN
ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE, THIS
COMMUNICATION IS NOT AN ATTEMPT TO COLLECT THE DEBT AGAINST YOU PERSONALLY, BUT IS NOTICE
OF A POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY.

| | |
|---|---|
| Unpaid Principal Balance: | $328,686.60 |
| Interest Total | $17,685.74 |
| Per Diem at $30.39<br>Interest Rate: 3.375% | |
| Pre-acceleration Late Charges | $ |
| Property Tax Advances | $ |
| Hazard Insurance Advances | $ |
| MIP/PMI | $ |
| Total Property Inspection Fees | $ |
| Total Fees and Costs | $148,591.13 |
| Other:<br>　　Payment Advance - Principal/Interest/Escrow | $9,953.53 |
| Less Suspense | ($ ) |
| Total: | $504,917.00 |

PURSUANT TO FEDERAL LAW, THIS LAW FIRM IS A DEBT COLLECTOR. PLEASE BE ADVISED THAT THIS IS AN ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE, THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT THE DEBT AGAINST YOU PERSONALLY, BUT IS NOTICE OF A POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY.

AFFIDAVIT OF DEBT

6. Debtor is contractually past due for December 1, 2017.

7. It is requested that this court take judicial notice that there are no setoffs or counterclaims applicable to this loan.

Printed Name: Mary Gracia
Title: Assistant Secretary of Nationstar Mortgage LLC
Date: 6/28/19 d/b/a Mr. Cooper
Affiant

Sworn to and subscribed before me on the 28 day of June , 2019 by

Mary Gracia .

(NOTARY SEAL)

Signature of Notary Public

CHASTITY WILSON
Notary Public, State of Texas
Comm. Expires 05-21-2023
Notary ID 130235636

PURSUANT TO FEDERAL LAW, THIS LAW FIRM IS A DEBT COLLECTOR. PLEASE BE ADVISED THAT THIS IS AN ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE, THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT THE DEBT AGAINST YOU PERSONALLY, BUT IS NOTICE OF A POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY.

AFTER RECORDING RETURN TO
ATTN: POA
4000 Horizon Way
Irving, TX 75063          LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that Deutsche Bank National Trust Company, a national banking association organized and existing under the laws of the United States, and having its usual place of business at 1761 East St. Andrew Place, Santa Ana, California, 92705, as Trustee (the "Trustee") pursuant to Agreements listed on Exhibit A attached hereto (the "Agreements"), hereby constitutes and appoints the Servicer, by and through the Servicer's officers, the Trustee's true and lawful Attorney-in-Fact, in the Trustee's name, place and stead and for the Trustee's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Agreement solely for the purpose of performing such acts and executing such documents in the name of the Trustee necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is acting as Trustee for various certificateholders (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which Nationstar Mortgage LLC is acting as the Servicer.

This Appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreement shall be construed to the contrary:

1.    The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided that (i) said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and (ii) otherwise conforms to the provisions of the Agreement.

2.    The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3.    The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4.    The completion of loan assumption agreements.

5.  The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6.  The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7.  The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8.  The full enforcement of and preservation of the Trustee's interests in the Mortgage Notes, Mortgages or Deeds of Trust, and in the proceeds thereof, by way of, including but not limited to, foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or the termination, cancellation or rescission of any such foreclosure, the initiation, prosecution and completion of eviction actions or proceedings with respect to, or the termination, cancellation or rescission of any such eviction actions or proceedings, and the pursuit of title insurance, hazard insurance and claims in bankruptcy proceedings, including, without limitation, any and all of the following acts:

    a.  the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

    b.  the preparation and issuance of statements of breach or non-performance;

    c.  the preparation and filing of notices of default and/or notices of sale;

    d.  the cancellation/rescission of notices of default and/or notices of sale;

    e.  the taking of deed in lieu of foreclosure;

    f.  the filing, prosecution and defense of claims, and to appear on behalf of the Trustee, in bankruptcy cases affecting Mortgage Notes, Mortgages or Deeds of Trust;

    g.  the preparation and service of notices to quit and all other documents necessary to initiate, prosecute and complete eviction actions or proceedings;

    h.  the tendering, filing, prosecution and defense, as applicable, of hazard insurance and title insurance claims, including but not limited to appearing on behalf of the Trustee in quiet title actions; and

2

    i.       the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8.a. through 8.h. above.

9.     With respect to the sale of property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation, the execution of the following documentation:

    a.      listing agreements;
    b.      purchase and sale agreements;
    c.      grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;
    d.      escrow instructions; and
    e.      any and all documents necessary to effect the transfer of property.

10.    The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall be effective as of August 29, 2013.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Solely to the extent that the Servicer has the power to delegate its rights or obligations under the Agreement, the Servicer also has the power to delegate the authority given to it by Deutsche Bank National Trust Company, as Trustee, under this Limited Power of Attorney, for purposes of performing its obligations and duties by executing such additional powers of attorney in favor of its attorneys-in-fact as are necessary for such purpose. The Servicer's attorneys-in-fact shall have no greater authority than that held by the Servicer.

Nothing contained herein shall: (i) limit in any manner any indemnification provided to the Trustee under the Agreement, (ii) limit in any manner the rights and protections afforded the Trustee under the Agreement, or (iii) be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Deutsche Bank National Trust Company except as specifically provided for herein. If the Servicer receives any notice of suit, litigation or proceeding in the name of Deutsche Bank National Trust Company, then the Servicer shall promptly forward a copy of same to the Trustee.

This limited power of attorney is not intended to extend the powers granted to the Servicer under the Agreement or to allow the Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreement.

The Servicer hereby agrees to indemnify and hold the Trustee and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by the Servicer, or its attorneys-in-fact, of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement or the earlier resignation or removal of the Trustee under the Agreement.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

IN WITNESS WHEREOF, Deutsche Bank National Trust Company, as Trustee has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this 29th day of August 29 2013.

Deutsche Bank National Trust Company,
as Trustee

By:_____

Name: Cindy Lai
Title: Assistant Vice President

4

Witness: Jenny Pilapil

_____

Witness: Jason Williams

_____

Prepared by:

_____

Name: Vaheh Bashikian
Title:   Trust Administrator
Address:      Deutsche Bank National Trust Company
                   1761 E. Saint Andrew Place
                   Santa Ana, CA 92705

State of California}
County of Orange}

On August 29, 2013, before me, Imelda Flores, Notary Public, personally appeared Cindy Lai, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____

Notary signature

IMELDA FLORES
Commission # 1991652
Notary Public - California
Orange County
My Comm. Expires Sep 20, 2016

5

EXHIBIT A

- Pooling and Servicing Agreement dated as of June 1, 2006 among Morgan Stanley ABS Capital I Inc., as Depositor, IXIS Real Estate Capital Inc., a Sponsor, First NLC Financial Services LLC, Decision One Mortgage Company, LLC, and WMC Mortgage Corp., as Responsible Parties, Wells Fargo Bank, N.A., as Master Servicer, Securities Administrator and as a Servicer, JPMorgan Chase Bank, N.A., as a Servicer, and Ocwen Loan Servicing, LLC as Successor Servicer to both Saxon Mortgage Services, Inc., and HomeEq Servicing Corporation, as Servicers, and Deutsche Bank National Trust Company, as Trustee

  Mortgage Loan Sale and Servicing Agreement dated as of October 1, 2005 by and between Countrywide Home Loans, Inc., as Seller, Nationstar Mortgage LLC as Servicer under the Agreements, successor to Bank of America, N.A., successor by merger to BAC Home Loans Servicing, L.P., fka Countrywide Home Loans Servicing LP, Inc. as Servicer and Morgan Stanley Mortgage Capital Inc., as Purchaser

- Pooling and Servicing Agreement dated as of November 1, 2006 among Morgan Stanley ABS Capital I Inc., as Depositor, Saxon Mortgage Services, Inc., as Servicer, Nationstar Mortgage LLC as Servicer under the Agreements, successor to Bank of America, N.A., successor by merger to BAC Home Loans Servicing, L.P., fka Countrywide Home Loans Servicing LP, as Servicer, First NLC Financial Services, LLC, as Responsible Party, Ixis Real Estate Capital Inc., as Sponsor and Deutsche Bank National Trust Company, as Trustee

6